IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JAMES M. ST. CLAIR,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO:** |
| | § | |
| **DON DAVIS AUTO GROUP, INC.** and | § | |
| **DON DAVIS NISSAN, INC.,** | § | |
| *jointly and severally,* | § | |
| | § | |
| *Defendant.* | § | ***DEMAND FOR JURY TRIAL*** |

PLAINTIFF'S ORIGINAL COMPLAINT
AND JURY DEMAND

TO THE HONORABLE JUDGE:

Plaintiff, James M. St. Clair files this Plaintiff's Original Complaint and Jury Demand against Defendant, Don Davis Auto Group, Inc. and Don Davis Nissan, Inc., jointly and severally, for disability discrimination, hostile work environment, retaliation, wrongful termination, intentional infliction of emotional distress, invasion of privacy-public disclosure of private facts, negligence, black listing and conspiracy. In support thereof Plaintiff states the following:

## I. PARTIES

1.      Plaintiff **JAMES M. ST. CLAIR** is a thirty two (32) year old, Caucasian, male, United States Citizen who resides in Arlington, Tarrant County, Texas.

2.      Defendant **DON DAVIS AUTO GROUP, INC.** is a Texas Corporation, with its headquarters located at: 725 East Lamar Boulevard, Arlington, Tarrant County, Texas 76011and who may be served with process by serving its registered agent of service ***Kris L. Landrith, at: 601 West Abram, Arlington, Tarrant County, Texas 76010.***

3.      Defendant **DON DAVIS NISSAN, INC.** is a Texas Corporation, with its headquarters located at: 1320 East I-20, Arlington, Tarrant County, Texas 76018 and who may be served with process by serving its registered agent of service *Kris L. Landrith, at: 601 West Abram, Arlington, Tarrant County, Texas 76010*.

4.      At all times relevant herein, **DON DAVIS AUTO GROUP, INC.** has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

5.      At all times relevant herein, **DON DAVIS NISSAN, INC.** has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## II. JURISDICTION

6.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451 (judiciary), 28 U.S.C. §1331 (federal question), 28 U.S.C. § 1337 (commerce), 28 U.S.C. §1343 (civil rights), 42 U.S.C. §12101, et. seq. (disability) and 42 U.S.C. §2000e-5(f)(1) (unlawful employment practices), (Title VII Enforcement) and 42 U.S.C. § 1981a (equal rights).

## III. PENDANT STATE LAW CLAIMS

7.      Plaintiff invokes this Court's jurisdiction pursuant to Rule 18(a) of the Federal Rules of Civil Procedure and 28 U.S.C. 1367 to hear and adjudicate claims arising out of the transactions set forth herein that violate rights and duties established by the laws of the State of Texas.

8.      The actions of the Defendant are further actionable under the Texas Commission on Human Rights Act (TCHRA) which has been codified into Chapter 21 of the Texas

Labor Code and all of the allegations contained within this complaint are incorporated into this claim by reference.

9.     Defendants have committed various torts including but not limited to intentional infliction of emotional distress, invasion of privacy-public disclosure of private facts, negligence, black listing and conspiracy against Plaintiff under Texas Law of which jurisdiction to adjudicate those torts rest with this court.

## IV. VENUE

10.     The employment practices of Defendants alleged to be unlawful were committed within the jurisdiction of the Northern District of Texas, Fort Worth Division.  In addition, Defendants maintain their primary business location within the jurisdiction of the Northern District of Texas.   Accordingly, venue is proper pursuant to 28 U.S.C. §1391(b)(1) & (2).

## V. EXHAUSTION OF ADMINISTRATION REMEDIES

11.     Prior to filing this action, Plaintiff timely filed with the Equal Employment Opportunity Commission ("EEOC") within the appropriate number of days, his written charge asserting Defendants disability discrimination where it is reasonably expected that during the EEOC investigation Defendants retaliation, hostile work environment and wrongful termination would be revealed. *Federal Exp. Corp. v. Holowecki*, 552 U.S. --- (2008), 128 S.Ct. 1147 (2008); *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 577-78 (5th Cir. 1993); *Martinez v. Potter,* 347 F.3d 1208 at 1210 (10th Cir. 2003); *Deravin v. Kerik,* 335 F.3d 195, 200-01 (2d Cir. 2003).

12.     In conformance with the law, Plaintiff has filed this action subsequent to the expiration of ninety (90) days from the date of receiving his right to sue letter from the EEOC and within two (2) years after Defendants willfully violated Plaintiff's rights.

Plaintiff received his right to sue letter from the EEOC; with a mailing date of March 25, 2011. Plaintiff has exhausted all administrative remedies; therefore all conditions precedent to the Plaintiff maintaining this civil action have accrued, occurred, or been waived. *Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005).

## VI. CONDITIONS PRECEDENT

13.     All conditions precedent; to Plaintiff bringing his claims against Defendants for disability discrimination, hostile work environment and retaliation have either been performed, have occurred or have been waived.

14.     All conditions precedent; to Plaintiff bringing his claims against Defendant for wrongful termination, intentional infliction of emotional distress, invasion of privacy-public disclosure of private facts, negligence, black listing and conspiracy have either been performed, have occurred or have been waived.

15.     All conditions precedent; to Plaintiff bringing this lawsuit have either been performed, have occurred or have been waived.

## VII. STATEMENT OF FACTS

16.     Defendant **DON DAVIS AUTO GROUP, INC.** is an employer with over 201 employees including its officers and directors in 2011.

17.     Defendant **DON DAVIS NISSIAN, INC.** is an employer with over 101 employees including its officers and directors in 2011.

18.     Defendant **DON DAVIS AUTO GROUP, INC.** is a recognized Federal Contractor and/or Sub-Contractor who is covered by the Affirmative Action Requirements of Section 503 of the Rehabilitation Act of 1973.

19.     Defendant **DON DAVIS NISSIAN, INC.** is a recognized Federal Contractor and/or Sub-Contractor who is covered by the Affirmative Action Requirements of Section 503 of the Rehabilitation Act of 1973.

20.     Defendant hired Plaintiff to fill the position of Service Advisor in November 2009. During Plaintiff's time of service with Defendants, Plaintiff continually held the position of Service Advisor.

21.     During Plaintiff's employment with Defendant, Plaintiff was never the subject of any disciplinary actions or warnings, prior to November 12, 2010.

22.      During Plaintiff's employment as a Service Advisor with Defendants, Plaintiff earned numerous accolades for his work, from his managers, peers and subordinates.

23.     During Plaintiff's employment with Defendant as a Service Advisor, Plaintiff continually maintained the highest sales numbers.

24.     During the Months of September, October and November 2010, while working with reasonable accommodation, Plaintiff was either Number One or Number Two in sales.

25.     On or about September 3, 2010; Plaintiff underwent surgery on his arm.

26.     On or about September 7, 2010, Plaintiff requested reasonable accommodation pursuant to the American with Disabilities Act from Defendants.

27.     On September 7, 2010, Plaintiff returned to work with doctors restrictions.

28.     On September 7, 2010, Plaintiff met the minimum definition of a *qualified individual with a disability* as provided for within the American with Disabilities Act.

29.     Beginning on September 7, 2010, Defendants provided reasonable accommodation pursuant to the American with Disabilities Act for Plaintiff until November 11, 2010.

30.    On or about November 11, 2010, Defendants unilaterally stopped providing Plaintiff with reasonable accommodation pursuant to the American with Disabilities Act.

31.    On or about November 11, 2010, Defendants told Plaintiff that he had to have a full medical release to return to work.

32.    This was an exact opposite of the policies and procedures of Defendant wherein Defendant allowed Plaintiff to work with doctors restrictions from September 3, 2010 through November 11, 2010.

33.    Defendant ratified Plaintiff's conduct by allowing Plaintiff to work with reasonable accommodation from September 3, 2010 through November 11, 2010.

34.    The unilateral decision to change its day-to-day operating procedure thereby not allowing Plaintiff to work until he had a full medical release discriminated against Plaintiff.

35.    Every time Plaintiff was either late or missed work as a result of his medical condition he *ALWAYS* brought a doctors' note into his immediate supervisor Manuel DeLeon.

36.    After Plaintiff returned to work with his disability, Manuel DeLeon and Frank Flores started treating Plaintiff differently.

37.    On or about November 11, 2010; Manuel DeLeon and Frank Flores took it upon themselves to send Plaintiff home because of his medical restrictions.

38.    On or about November 11, 2010; Manuel DeLeon and Frank Flores took it upon themselves to send Plaintiff home because of his disability.

39.    On or about November 11, 2010; Manuel DeLeon and Frank Flores told Plaintiff he could not return to work until he received a FULL medical release.

---

40.     On or about November 11, 2010; Manuel DeLeon and Frank Flores knew Plaintiff met the definition of *qualified individual with a disability* as provided for within the American with Disabilities Act.

41.     On or about November 11, 2010; when Defendants stopped its reasonable accommodation of Plaintiff, Defendants immediately tried to force Plaintiff into using the Family Medical Leave Act (FMLA) for leave.

42.     Plaintiff did not request or want FMLA leave.

43.     Plaintiff wanted to continue working with the same reasonable accommodation Defendants had provided since September 7, 2010.

44.     As a result of Defendants sending Plaintiff home combined with Defendants attempting to force Plaintiff to take FMLA, Defendants terminated Plaintiff's employment on December 9, 2010.

45.     On December 9, 2010, Defendants terminated Plaintiff's employment because of excessive absences.

46.     But for Manuel DeLeon and Frank Flores sending Plaintiff home on or about November 11, 2010, Plaintiff would not have had any absences.

47.     Manuel DeLeon and Frank Flores stopped Plaintiff from continuing to work with accommodation on or about November 11, 2010.

48.     But for Defendants attempt to force Plaintiff into taking FMLA leave, Defendants would not have been able to use the reason of failure to respond by turning in the FMLA papers are part of their reason for terminating Plaintiff.

49.     Plaintiff was under no legal requirement to take FMLA leave.

50.     Plaintiff had the right to deny taking FMLA leave.

51.     Defendant did not have the right to force Plaintiff into taking FMLA leave.

52.     Defendants created the very situation for which Defendants terminated Plaintiff.

53.     On December 9, 2010; Rosellen Dugan with the approval of Defendants and its agents, terminated Plaintiff's employment.

54.     Defendant does not apply its written Absenteeism and Tardiness Policy equally among all Defendants employees.

55.     Defendants provide a handbook of policies to its employees wherein it describes various rules, policies, benefits and discipline policy.  However Defendants violate its own handbook of policies and does not enforce all Defendants policies equally among all of Defendants employees.

56.     Defendants management has acknowledged it did not enforce all of Defendants policies equally among all Defendants employees.

57.     Defendant did not provide disability discrimination training.

58.     Defendant did not provide family medical leave act (FMLA) training.

59.     Defendant did not provide reasonable accommodation training.

60.     Defendant did not provide diversity training.

61.     On or about December 3, 2010, Plaintiff filed his initial Charge of Discrimination with the Equal Employment Opportunity Commission.

62.     On March 25, 2011, the Equal Employment Opportunity Commission sent Plaintiff a Notice of Suit Rights concerning his initial Charge of Discrimination filed with the Equal Employment Opportunity Commission.

63.     On or about June 22, 2011, Plaintiff filed his Original Complaint.

## VIII. DAMAGES

64.     As a direct and proximate consequence of Defendant's unlawful and discriminatory employment policies and practices, Plaintiff has suffered losses including,

but not limited to, back pay, front pay, loss of wages and benefits in the past and future, costs of court, expert fees and attorney fees, mental anguish, humiliation and emotional distress in the past and future, prejudgment and post judgment interest, benefits, special damages, expenses, punitive/liquidated damages, and punitive damages, all to be specified at trial and any injunctive relief deemed appropriate and available under the statute which Plaintiff brings this action.

65.     Based on information and belief, Defendants are employers of over 201 employees including its officers and directors in 2011.  *See: Vance v. Union Planters Corp.*, 209 F.3d 438 (5th Cir. 2000).

## IX. PROTECTED CLASS MEMBERSHIP

66.     This lawsuit is brought under 42 U.S.C. §2000 et. seq. (Title VII) and its counterpart 42 U.S.C. §1981.    Title VII and §1981 prohibit employers from discriminating "against any individual with respect to their compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin.  *See:* 42 U.S.C. §2000e-2(a).

67.     Additionally this lawsuit is brought pursuant to the Americans with Disabilities Act of 1990, et. seq. (ADA) and the American with Disabilities Act Amendments Act of 2008 (ADAAA).  *See:*  42 U.S.C. §§ 12111-12117; 42 U.S.C. §§ 12201-12213.

68.     Plaintiff identifies that he is a member of the following protected classes:

  a)    qualified disabled as defined by the (ADA & ADAAA); and
  b)    hostile work environment; and
  c)    filed complaint with EEOC concerning unlawful employment conditions; and
  d)    retaliation prohibited;
  e)    other applicable laws.

69.     Plaintiff identifies that he is a member of the protected classes identified in paragraph 68 above as defined within the Texas Commission on Human Rights Act

(TCHRA) which has been codified into Chapter 21 of the Texas Labor Code and other Texas Statutes.

## X. CAUSES OF ACTION

### COUNT ONE – DISABILITY DISCRIMINATION

### IN THE WORKPLACE

70.     Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 69 as if fully stated herein.

71.     In addition to Plaintiff being a member of the Protected Classes described in Section Nine above; Plaintiff believes another motivating factor for the conduct of Manuel DeLeon, Frank Flores and Defendant rests with Plaintiff having been diagnosed with having medical condition that meets the definition of *qualified individual with a disability* as defined by Americans With Disabilities Act of 1990, et. seq. (ADA) and the American with Disabilities Act Amendments Act of 2008 (ADAAA). *See:* 42 U.S.C. §§ 12111-12117; 42 U.S.C. §§ 12201-12213.

72.     In addition to Plaintiff being a member of the Protected Classes described in Section Nine above; Plaintiff believes another motivating factor for the conduct of Manuel DeLeon and Frank Flores and Defendant rests with Plaintiff being legally classified as *qualified individual with a disability* and being on restricted duties as outlined by Plaintiffs physician.

73.     Sometime after September 7, 2010; Plaintiff was diagnosed with having a medical condition that met the definition as *qualified individual with a disability* as defined by the Americans with Disabilities Act of 1990, et. seq. (ADA) and the American with Disabilities Act Amendments Act of 2008 (ADAAA).  See:  42 U.S.C. §§ 12111-12117; 42 U.S.C. §§ 12201-12213.

74.     Shortly after September 7, 2010; Plaintiff reported his medical condition to his immediate supervisor Manuel DeLeon and Frank Flores.

75.     After Plaintiff reported his medical condition the retaliation from Manuel DeLeon and Frank Flores started.

76.     Although Plaintiff asks Manuel DeLeon and Frank Flores to not tell anyone outside of management about his medical condition, however Manuel DeLeon and Frank Flores told Plaintiffs co-workers and others about Plaintiffs medical condition.

77.     Plaintiff further believes that Manuel DeLeon and Frank Flores left documents in plain sight concerning Plaintiffs medical condition so Plaintiffs co-workers and others had access to review them.

78.     Defendant did make a *Reasonable Accommodation* for Plaintiff from September 7, 2010 until on or about November 11, 2010.

79.     Manuel DeLeon, Frank Flores and Defendants then started threatening to terminate Plaintiff is he did not return to work with *NO RESTRICTION.*

80.     On or about November 11, 2010, Manuel DeLeon and Frank Flores sent Plaintiff home because Plaintiff had a work restriction.

81.     Defendants ratified the conduct of Manuel DeLeon and Frank Flores when Defendants took no steps to keep Plaintiff at work.

82.     On or about November 11, 2010; Manuel DeLeon, Frank Flores and Defendants told Plaintiff that they needed Plaintiff to return to work with NO restrictions from his physicians or otherwise Plaintiff would be terminated.

83.     Manuel DeLeon, Frank Flores and Defendants tried to force Plaintiff to perform duties beyond the medical restrictions provided by his physician, but Plaintiff refused.

84.     Defendant has several positions which Plaintiff could fill that would allow Plaintiff to adhere to the medical restrictions provided by his physician.

85.     Manuel DeLeon, Frank Flores and Defendants have stopped providing a *REASONABLE ACCOMMODATION* to Plaintiff.

86.     Plaintiff suffered an adverse employment action when Manuel DeLeon, Frank Flores and Defendants in retaliation changed Plaintiffs working conditions.

87.     Defendants provided NO, American with Disabilities Act training to Manuel DeLeon.

88.     Defendants provided NO, training in the enforcement of the Defendants written American with Disabilities Act policy to Manuel DeLeon.

89.     Manuel DeLeon, a supervisor, is responsible for enforcing Defendants American with Disabilities Act written policy.

90.     Defendants did not provide adequate supervision of Manuel DeLeon to prevent Plaintiffs rights as outlined within the Americans with Disabilities Act of 1990, et. seq. (ADA) and the American with Disabilities Act Amendments Act of 2008 (ADAAA).  See: 42 U.S.C. §§ 12111-12117; 42 U.S.C. §§ 12201-12213 from being violated.

91.     Defendants provided NO, American with Disabilities Act training to Frank Flores.

92.     Defendants provided NO, training in the enforcement of the Defendants written American with Disabilities Act policy to Frank Flores.

93.     Frank Flores, a supervisor, is responsible for enforcing Defendants American with Disabilities Act written policy.

94.     Defendants did not provide adequate supervision of Frank Flores to prevent Plaintiffs rights as outlined within the Americans with Disabilities Act of 1990, et. seq.

(ADA) and the American with Disabilities Act Amendments Act of 2008 (ADAAA).  See: 42 U.S.C. §§ 12111-12117; 42 U.S.C. §§ 12201-12213 from being violated.

95.     Defendant intentionally and willfully discriminated against Plaintiff.

96.     The unlawful employment practices complained of herein were intentional.

97.     The unlawful employment practices complained of herein were done with malice or reckless indifference to the protected rights of Plaintiff and other male employees.

98.     As a result of Defendants' discriminatory conduct, Plaintiff has suffered and will continue to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with her employment.

99.     As a result of Defendants' discriminatory conduct, Plaintiff has suffered non-pecuniary losses, including but not limited to, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.  Because of these losses Plaintiff seeks compensatory damages.

100.    Defendants' actions were done with malice and/or with reckless indifference to Plaintiff's protected rights.  Plaintiff is therefore entitled to punitive damages.

101.    Plaintiff also seeks reasonable attorneys' fees, court costs and including reasonable expert fees.

## COUNT TWO - HOSTILE WORK ENVIRONMENT

## IN THE WORKPLACE

102.    Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 101 as if fully stated herein.

103.    Plaintiff will prove a Hostile Work Environment by establishing his prima facia case by showing as follows:

    1) there was unwelcome harassment;

2) the harassment was based on disability, sex, race, color, national origin or religion; (age or disability - under different statutes)

3) the harassment was so severe or so pervasive that it altered the conditions of employment and created an abusive atmosphere; and

4) there is some basis for imposing liability on the employer.

104.   Plaintiff is repeatedly discriminated against each time Defendant provides **different** treatment to other employees of Defendant.

105.   Because Plaintiff belongs to the Protective Classes outlined in Section Nine above said retaliatory, harassing and discriminatory treatment of Manuel DeLeon, Frank Flores, Defendants and others was directed toward Plaintiff.  Such retaliatory, harassing and discriminatory conduct in and of itself created daily tension and hostility within the workplace contributing to a hostile work environment.

106.   Plaintiff was repeatedly harassed about his work restriction and disability in the work place by Manuel DeLeon, Frank Flores and others.

107.   On numerous occasions Plaintiff was ridiculed, mocked and made fun of because of his work restriction and disability in the work place by Manuel DeLeon, Frank Flores and others.

108.   Defendants knew these behaviors by Manuel DeLeon, Frank Flores and others create liability for the Defendants because they are based on Plaintiff's medical condition, disability and are severe or pervasive.

109.   Nonetheless, even if the unwelcome conduct falls short of a *legal violation*, employers like Defendants have moral and organizational reasons as well as legal incentives to address and correct such conduct at its earliest stages.

110.   Defendant is aware that the type behaviors outlined above exist in its work place, but have failed and refused to take action to stop such behavior.

111.   Manuel DeLeon and Frank Flores, supervisors are aware that the type behaviors outlined above exist in Defendants work place but they have failed and refused to take action to stop such behavior.

112.   But for Plaintiff being a member of the Protected Classes as outlined in Section Nine above would not have suffered disparate treatment.

113.   Plaintiff has several examples of disparate treatment and disparate impact treatment toward Plaintiff and therefore reserves the right to raise those examples as discovery progresses.

114.   Defendant failed to take any action, failed to take remedial action, failed to discipline its employees, failed to separate the employees, and/or failed to take corrective action all the while encouraging a hostile work environment.

115.   All of the events outlined here in totality establishes a hostile work environment exist at Defendants work place.

116.   The unlawful employment practices complained of herein were done with malice or reckless indifference to the protected rights of Plaintiff and other male employees.

117.   As a result of Defendants' discriminatory conduct, Plaintiff has suffered and will continue to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with her employment.

118.   As a result of Defendants' discriminatory conduct, Plaintiff has suffered non-pecuniary losses, including but not limited to, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, which non-

pecuniary losses only exacerbated Plaintiff medical condition.  Because of these losses Plaintiff seeks compensatory damages.

119.   Defendants' actions were done with malice and/or with reckless indifference to Plaintiff's protected rights.  Plaintiff is therefore entitled to punitive damages.

120.   Plaintiff also seeks reasonable attorneys' fees, court costs and including reasonable expert fees.

## COUNT THREE - RETALIATION

## IN THE WORKPLACE

121.   Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 120 as if fully stated herein.

122.   Throughout the course of employment with Defendant, and more specifically in 2010, Plaintiff time and again suffered unproductive disparaging remarks.

123.   The disparaging remarks increased when Plaintiff notified Manuel DeLeon, Frank Flores and Defendants of his work restrictions and medical condition and continued unabated until Plaintiff's termination.

124.   But for Plaintiff being a member of the Protected Classes as outlined in Section Nine above would not have suffered retaliation.

125.   Manuel DeLeon, Frank Flores and Defendants retaliation against Plaintiff during 2010 included but is not limited to:

    1)    Defendants doing whatever they want to regardless of the law;

    2)    Defendants doing whatever they want to regardless of legal counseling;

    3)    Defendants uttering dictums in opposition to written policy;

    4)    Defendants treating some employees differently than all other employees;

    5)    Defendants harassing Plaintiff;

6)   Defendants and others uttering disparaging remarks at Plaintiff;

7)   Defendants and others yelling at Plaintiff;

8)   Defendants and others being insubordinate to Plaintiff;

9)   Defendants and others conspiring to harass Plaintiff;

10)   Defendants and others conspiring to discriminate against Plaintiff;

11)   Defendants and others conspiring to retaliate against Plaintiff;

12)   Defendants and others creating events at the workplace to cause more stress and aggravation for Plaintiff.

126.   Most if not all of the acts complained of within this Complaint were retaliatory in nature and directed toward Plaintiff, because Plaintiff belongs to the Protected Groups as outlined in Section 9 above.

127.   It is unlawful to retaliate against an individual for opposing discriminatory employment practices or for filing a discrimination charge, testifying, or participating in any way in an investigation, proceeding, or litigation under the ADEA, Title VII and/or the Texas Labor Code.

128.   Defendant further violated Plaintiff's civil rights by taking adverse actions against him in response to his complaints about the discriminatory working conditions that ultimately resulted in unlawful termination of employment.

129.   During the course of Plaintiff's employment, Defendant, acting through its agents and vice principals, in a continuous course of conduct, discriminated against Plaintiff in the terms, conditions and privileges of his employment due to his disability and due to retaliation for having participated in an EEOC proceeding and/or for having opposed conduct which he had a good faith belief was discriminatory on the basis of disability and retaliation including in that:

A.      Defendants, through their agents, supervisors and/or employees, in a continuing course of conduct, subjected Plaintiff to retaliation and discrimination in the terms, conditions, and privileges of his employment in retaliation for his filing a charge of discrimination with the EEOC and/or participating in a proceeding with that agency against his employer and/or because he opposed discrimination and retaliation at Defendants' place of employ.  Plaintiff also asserts that the Defendants have engaged in disability discrimination by failing to make reasonable accommodation for Plaintiff.

130.   Plaintiff further alleges that Defendants engaged in the conduct described herein with malice or reckless indifference to the protected statutory rights of its employees, including Plaintiff.

131.   Plaintiff further alleges that Defendants' disability discrimination and retaliation conduct in violation of Americans with Disabilities Act of 1990, et. seq. (ADA) and the American with Disabilities Act Amendments Act of 2008 (ADAAA).  See:  42 U.S.C. §§ 12111-12117; 42 U.S.C. §§ 12201-12213 and Title VII and is willful under Title VII.

132.   The unlawful employment practices complained of herein were intentional.

133.   The unlawful employment practices complained of herein were done with malice or reckless indifference to the protected rights of Plaintiff and other employees of Defendants.

134.   As a result of Defendants' discriminatory conduct, Plaintiff has suffered and will continue to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with her employment.

135.   As a result of Defendants' discriminatory conduct, Plaintiff has suffered non-pecuniary losses, including but not limited to, emotional pain, suffering, inconvenience,

mental anguish, loss of enjoyment of life, and other non-pecuniary losses.  Because of these losses Plaintiff seeks compensatory damages.

136.   Defendants' actions were done with malice and/or with reckless indifference to Plaintiff's protected rights.  Plaintiff is therefore entitled to punitive damages.

137.   Plaintiff also seeks reasonable attorneys' fees, court costs and including reasonable expert fees.

<u>**COUNT FOUR – WRONGFUL TERMINATION**</u>

138.   Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 137 as if fully stated herein.

139.   Defendants had NO legitimate business reason to terminate Plaintiff.

140.   Manuel DeLeon, Frank Flores and Defendants told Plaintiff to go home on or about November 11, 2010 because Plaintiff had work restrictions.

141.   Rather than go home Plaintiff wanted to continue working with the reasonable accommodations Defendants had provided Plaintiff since September 7, 2010.

142.   However Manuel DeLeon, Frank Flores and Defendants REFUSED to continue the reasonable accommodations Defendants had provided Plaintiff since September 7, 2010.

143.   On or about November 11, 2010, Plaintiff went home as instructed.

144.   At this point Rosellen Dugan and Defendants started a campaign in an attempt to force Plaintiff to take Family Medical Leave Act (FMLA) leave.

145.   Plaintiff did not request FMLA leave.

146.   Plaintiff did not want FMLA leave.

147.   Plaintiff wanted to continue to work with the reasonable accommodations Defendants had provided Plaintiff since September 7, 2010.

148.   When Rosellen Dugan and Defendants attempts to force Plaintiff to take FMLA leave failed, Defendants terminated Plaintiff.

149.   Plaintiff's initial reason for terminating Plaintiff was Plaintiff "Excessive Absences" then was changed to "Voluntary Quit", "Abandoned Job" when the matter was brought before the Texas Workforce Commission, none of which were the real reason.

150.   The real reason Plaintiff was terminated was because Plaintiff had a medical condition which caused him to have a work restriction.

151.   Manuel DeLeon, Frank Flores, Rosellen Dugan and Defendants did not want an employee with a medical condition which caused them to have a work restriction working for them.

152.   A review of Defendants handling this matter involving individuals with a medical condition which caused them to have a work restriction and defined also as an *qualified individual with a disability* as defined by the Americans With Disabilities Act of 1990, et. seq. (ADA) and the American with Disabilities Act Amendments Act of 2008 (ADAAA). See:   42  U.S.C.  §§  12111-12117;  42  U.S.C.  §§  12201-12213,  does  not  follow established guidelines and established by the Society of Human Resource Management or the community.

153.   Manuel DeLeon, Frank Flores and Defendants tried several methods in an attempt to force Plaintiff to resign.

154.   At all times material herein Plaintiff maintained impeccable qualifications.

155.   Plaintiff never received any disciplinary actions.

156.   Plaintiff was terminated under the guise of Defendant having a legitimate business need to do so, when in fact that isn't true.

157.   Plaintiff was wrongfully terminated.

158.  The unlawful employment practices complained of herein were intentional.

159.  The unlawful employment practices complained of herein were done with malice or reckless indifference to the federally protected rights of Plaintiff.

160.  As a result of Defendants' discriminatory conduct, Plaintiff has suffered and will continue to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with his employment.

161.  As a result of Defendants' discriminatory conduct, Plaintiff has suffered non-pecuniary losses, including but not limited to, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.  Because of these losses Plaintiff seeks compensatory damages.

162.  Defendants' actions were done with malice and/or with reckless indifference to Plaintiff's protected rights.  Plaintiff is therefore entitled to punitive damages.

163.  Plaintiff also seeks reasonable attorneys' fees, court costs and including reasonable expert fees.

## COUNT FIVE - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

## IN THE WORKPLACE

164.  Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 163 as if fully stated herein.

165.  Plaintiff brings suit against Defendant in Plaintiff's individual capacity.  *See: Haygood v. Chandler*, No. 12-02-00239-CV(Tex.App.-Tyler 2003, pet. denied)(memo op.;10-31-03).

166.  Defendant knew about of all the matters claimed herein; however Defendant failed and refused to take any steps to stop the harassment, hostile work environment, retaliation and disability discrimination.

---

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

167.   By Defendants failure and refusal to stop the discriminatory, hostile work environment, retaliation, harassment and disability discrimination conduct caused Plaintiff to suffer sever emotional distress which exacerbated Plaintiffs other medical conditions.

168.   Defendants knew that continuing to allow the discriminatory, hostile work environment, retaliation, harassment and disability discrimination conduct to continue created a high degree of risk of harm to Plaintiff and others; however Defendants deliberately proceeded to act in conscious disregard of with indifference to that rise.

169.   Defendants have intimate knowledge of other employees of Defendants who had nervous breakdowns and other emotion distress issues so severe they were hospitalized and in some cases never returned to Defendants employ.  Despite this special knowledge Defendants continues to fail and refuse to stop the discriminatory, hostile work environment, retaliation, harassment and disability discrimination conduct.

170.   Defendant has intimate knowledge of other employees of Defendant who had been administered medications for depression, stress, anxiety and other emotional conditions so they can function day-to-day.  Despite this special knowledge Defendants continues to fail and refuse to stop the discriminatory, hostile work environment, retaliation, harassment and disability discrimination conduct.

171.   Plaintiffs severe emotional distress includes painful emotional and mental reactions, such as embarrassment, fright, horror, grief, shame, humiliation, uncontrollable crying episodes, difficulty sleeping, emotional outbursts, stomach disorders, headaches, depression and worry.

172.   Defendants extreme and outrageous conduct was intensified with Defendants day-to-day harassing conduct aimed at Plaintiff, proximately caused sever emotional distress to Plaintiff.

173.   Plaintiff's severe emotional distress cannot be remedied by any other cause of action.

174.   Plaintiff seeks unliquidated damages within the jurisdictional limits of this court.

175.   Defendants unlawful conduct complained of by Plaintiff herein was done with malice or reckless indifference to the rights of Plaintiff which entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code section §41.003(a).

176.   Plaintiff also seeks reasonable attorneys' fees, court costs and including reasonable expert fees.

## COUNT SIX - INVASION OF PRIVACY-PUBLIC DISCLOSURE OF PRIVATE FACTS IN THE WORKPLACE AT TYLER CARDIOVASCULAR CONSULTANTS

177.   Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 176 as if fully stated herein.

178.   Manuel DeLeon, Frank Flores and Defendants publicized information about Plaintiff's private life and medical condition to other co-workers, others and the public.

179.   The information publicized was not a) matters already known, b) not matters of public record and c) not matters in public view.

180.   The information publicized was highly offensive to Plaintiff.  The information publicized contained highly intimate an embarrassing facts about Plaintiff's private life. This information contained facts about Plaintiffs unpleasant, humiliating illnesses and disability.

181.   Under Texas law the public has not legitimate interest in private, embarrassing facts about private citizens.  *Industrial Found v. Texas Indus.Acc.Bd.*, 540 S.W.2d 668, 683 (Tex.1976).

182.   Defendant intentionally and willfully publically disclosed Private Facts about Plaintiff.

183.   The unlawful public disclosure of Private Facts about Plaintiff complained of herein was done with malice or reckless indifference to the rights of Plaintiff which entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code section §41.003(a).

184.   As a result of Defendants' public disclosure of Private Facts about Plaintiff, Plaintiff has suffered and will continue to suffer pecuniary losses.

185.   As a result of Defendants' public disclosure of Private Facts about Plaintiff, Plaintiff has suffered non-pecuniary losses, including but not limited to, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.  Because of these losses Plaintiff seeks compensatory damages.

186.   Defendants' actions were done with malice and/or with reckless indifference to Plaintiff's protected rights.  Plaintiff is therefore entitled to punitive damages.

187.   Plaintiff also seeks reasonable attorneys' fees, court costs and including reasonable expert fees.

## COUNT SEVEN - NEGLIGENCE AND NEGLIGENCE PER SE

## IN THE WORKPLACE AT TYLER CARDIOVASCULAR CONSULTANTS

188.   Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 187 as if fully stated herein.

189.   Defendants owed the following legal duties to Plaintiff:

a)  Duty to use ordinary care in providing a reasonably safe workplace.  *Kroger*, 197 S.W.3d 793, 794 (Tex.2006);

b)  Duty to use ordinary care in supervising an employee's activities.  *Farley*, 529 S.W.2d 751, 754 (Tex.1975);

c)   Duty to use ordinary care in providing employees adequate help in the performance of work; *Matherne*, 987S.W.2d at 149-50;

d)   Duty to use ordinary care in hiring employees.  *Fort Worth Elevators*, 70 S.W.2d at 401;

e)  Duty to use ordinary care in supervising its employees.  *Mackey*, 935 S.W.2d 446, 459 (Tyler 1997, denied); and

f)   Duty to use ordinary care in training its employees.  *Allsup's Convenience Stores*, 934 S.W.2d 433, 437 (Amar.1996, denied).

190.   Defendant breached the legal duties it owed to Plaintiff as follows:

a)  Defendant does not provide a safe workplace free from harassment, disability discrimination, retaliation, hostile work environment and emotional distress;

b)  Defendant does not use ordinary care in supervising an employee's activities as evidenced by the multiple claims against Manuel DeLeon and Frank Flores, Supervisors and the continued outrageous conduct Defendants allow to continue on a day-to-day basis;

c)  Defendant does not provide employees adequate help in the performance of work as is evidenced by the business continually being short staffed, work not completed and exorbitant about of overtime hours;

d)   Defendant does not provide ordinary care in hiring employees as Defendant continually hires employees without the proper experience, then fails and refuses to

train the new hires, all the while expecting them to meet certain levels; further Plaintiff's hiring methodology does not follow well grounded human resource policies;

e) Defendant does not use ordinary care in supervising its employees as evidenced by the multiple claims against Manuel DeLeon and Frank Flores, Supervisors and the continued outrageous conduct Defendant allows to continue on a day-to-day basis contributing to a hostile work environment;

f) Defendant does not use ordinary care in training its employees as Defendant has failed and refused to train employees concerning sexual harassment, discrimination, diversity, disability discrimination, EEOC policies, the written policies in Defendants Employee Handbook and other areas; this failure is compounded by the fact that Defendant does not train its supervisors in how to handle situations, how to enforce the written polices in Defendants Employee Handbook and other areas however Defendant expects its supervisors to perform these functions without training which only leads to violations of employees rights.

191. As a result of Defendants negligence outlined herein Manuel DeLeon, Frank Flores and Defendants have discriminated against Plaintiff, caused the existence of an ongoing hostile work environment, subjected Plaintiff to harassment, disability discrimination and retaliated against Plaintiff.

192. As a further result of Defendants negligence outlined herein Manuel DeLeon, Frank Flores and Defendant have discriminated against Plaintiff when they enforced Defendants Absenteeism and Tardiness Policy on Plaintiff differently than their enforcement of the same policy on other employees of Defendant, which caused Plaintiff to endure an adverse employment action.

193.   As a further result of Defendants negligence outlined herein Manuel DeLeon, Frank Flores and Defendants have discriminated against Plaintiff because of Plaintiffs disability.

194.   As a further result of Defendants negligence outlined herein Manuel DeLeon, Frank Flores and Defendants have violated 42 U.S.C. §2000, et. seq., 42 U.S.C. § 1981, 42 U.S.C. §§12111-12117; 42 U.S.C. §§ 12201-12213; Texas Commission on Human Rights Act codified into Chapter 21 of the Texas Labor Code.

195.   As a further result of Defendants negligence outlined herein Manuel DeLeon, Frank Flores and Defendants have committed various torts against Plaintiff.

196.   Plaintiff seeks unliquidated damages within the jurisdictional limits of this court.

197.   Defendants unlawful conduct complained of by Plaintiff herein was done with malice or reckless indifference to the rights of Plaintiff which entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code section §41.003(a).

198.   Plaintiff also seeks reasonable attorneys' fees, court costs and including reasonable expert fees.

## COUNT EIGHT – BLACK LISTING

199.   Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 198 as if fully stated herein.

200.   In this section, V.T.C.A., Labor Code §52.031 "blacklist" means to place on a book or list or publish the name of an employee of an individual, firm, company, or corporation who was discharged or who voluntarily left that employment, intending to prevent the employee from engaging in or securing employment of any kind with any other person, in either a public or a private capacity.

201.  Based upon information and belief Defendants published information about Plaintiff on social networking site in an attempt to prevent Plaintiff from obtaining employment.

202.  Based upon information and belief Defendant published information about Plaintiff by speaking with others in the car sales & service field in an attempt to prevent Plaintiff from obtaining employment.

203.  Based upon information and belief Defendant has provided bad references for Plaintiff thereby intentionally keeping Plaintiff from learning of new employment opportunities and in an attempt to prevent Plaintiff from accepting employment with other potential employers.

204.  V.A.C.S. Article 5196c refers to preventing employees from securing employment with "any other person, firm, company or corporation." V.A.C.S. Article 5196d refers to preventing an employee from securing employment from "any other corporation, company or individual."

205.  As a direct and proximate consequence of Defendant's unlawful policies and practices, Plaintiff has suffered losses including, but not limited to, back pay, front pay, loss of wages and benefits in the past and future, loss of employment opportunity wages and benefits in the past and future, costs of court, expert fees and attorney fees, mental anguish, humiliation and emotional distress in the past and future, prejudgment and post judgment interest, benefits, special damages, expenses, punitive/liquidated damages, and punitive damages, all to be specified at trial and any injunctive relief deemed appropriate and available under the statute which Plaintiff brings this action.

## COUNT NINE - PARTICIPATORY LIABILITY - CONSPIRACY

## IN THE WORKPLACE

206.   Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 205 as if fully stated herein.

207.   Defendant in combination with Manuel DeLeon, Frank Flores and others unknown, agreed to maintain the status quo of Defendants work location of discrimination, harassment, disability discrimination, retaliation, hostile work environment, to not enforce Defendants written Absenteeism and Tardiness Policy equally among all employees, all the while being grossly negligent without regard to the duties Manuel DeLeon, Frank Flores and Defendants owed Plaintiff and Plaintiffs rights.

208.   Manuel DeLeon, Frank Flores and Defendants agreed to commit all the acts outlined herein, which is evidenced by Defendants' ratification of the outrageous conduct.

209.   Manuel DeLeon, Frank Flores and Defendants knew the agreed acts would result in harm to Plaintiff.

210.   To accomplish the object of their agreement, Plaintiff has outlined the outrageous conduct herein, which has thus far allowed Defendants to maintain its status quo violating Plaintiffs rights on a day-by-day basis.

211.   Defendants agreement and conduct flies in the face of normally accepted Human Resource practices.

212.   Defendants conspiratorial agreement proximately caused injury to Plaintiff.

213.   Plaintiff seeks unliquidated damages within the jurisdictional limits of this court.

214.   Defendants unlawful conduct complained of by Plaintiff herein was done with malice or reckless indifference to the rights of Plaintiff which entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code section §41.003(a).

215.   Plaintiff also seeks reasonable attorneys' fees, court costs and including reasonable expert fees.

### COUNT TEN - VICARIOUS LIABILITY

### RESPONDEAT SUPERIOR - RATIFICATION

### IN THE WORKPLACE

216.   Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 215 as if fully stated herein.

217.   The acts of Manuel DeLeon, Frank Flores and Rosellen Dugan, employees, were performed while in the employment of Defendants and were within the course and scope of that employment or within the authority delegated to the employee.

218.   Therefore the conduct of Manuel DeLeon, Frank Flores and Rosellen Dugan, employees toward Plaintiff as outlined herein was performed while in the employment of Defendants.

219.   Further the conduct of Manuel DeLeon, Frank Flores and Rosellen Dugan, employees toward Plaintiff as outlined herein was approved by Defendants as Defendants took no steps to change, alter, stop or modify said conduct.

220.   At the time of the conduct of Manuel DeLeon, Frank Flores and Rosellen Dugan were acting on Defendant's behalf.

221.   After the events complained of, Defendants were fully aware of Manuel DeLeon, Frank Flores and Rosellen Dugans' acts, and approved them by Defendants acts or failure to act.

222.   Defendant approved Manuel DeLeon, Frank Flores and Rosellen Dugans' acts with intent to validate them.

223.   Therefore Defendants are liable for the acts of Manuel DeLeon, Frank Flores and Rosellen Dugan as outlined herein.

## XI. INJUNCTIVE RELIEF

224.   Plaintiff restates, realleges, reavers and hereby incorporates by reference any and all allegations of Paragraphs 1 through 223, inclusive, herein.  In addition, Plaintiff alleges that Defendant's discriminatory actions outlined herein must be enjoined by this Court in order to force Defendant to comply with the law.  It is suggested that the injunction be specific in enjoining Defendant and its' employees, agents and representatives.

225.   That this Court retain jurisdiction for five (5) years to make sure Defendant is complying with the law.

## XII. DEMAND FOR A TRIAL BY JURY

226.   Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.  *See also:*  U.S. Const. Amend. 7.  In accordance with the Federal Rules, this jury demand is being filed with the Clerk of the United States District Court for the Northern District of Texas, Fort Worth Division as required by Fed. R. Civ. P. 5(d) and Fed. R. Civ. P. 38(b).

## XIII. PRAYER

**WHEREFORE**, Plaintiff respectfully prays this Court to:

   a. Defendants be summoned to appear and answer herein;

   b. Issue findings of fact and conclusions of law that Defendant's acts, practices, and procedures, subjected Plaintiff to Discrimination, Harassment, Hostile Work Environment, Retaliation and Disability Discrimination as complained of herein violated Plaintiff's rights as secured under Title VII, and or the American With

Disabilities Act and American With Disabilities Act Amendment Act, or like state statutes:

c.  Grant to Plaintiff a permanent injunction enjoining Defendant, its officers, gents, successors, employees, attorneys, assigns and other representatives, and all those acting in concert; or participation with them and at their direction, from engaging in any employment policy or practice shown to discriminate against Plaintiff in violation of Title VII on the basis of discrimination, hostile work environment, retaliation, disability discrimination and or like state statutes;

d.  Grant to Plaintiff a judgment for damages, for discrimination, harassment, hostile work environment, retaliation, Defendants in an amount of $500,000.00 at the time of filing;

e.  Grant to Plaintiff a judgment for damages, for Disability Discrimination in violation of the Americans with Disabilities Act in an amount of $500,000.00 at the time of filing;

f.  Retain jurisdiction over this action to assure full compliance with the orders of this Court and with applicable law;

g.  Award him judgment for his damages for pain and suffering, mental anguish and for the humiliation caused by Defendant's unlawful treatment in the amount of $1,000,000.00 or more;

h.  Plaintiff prays for an award of punitive damages in an amount believed by the court to be appropriate to punish Defendant for the willful and malicious misconduct and necessary to deter Defendant from engaging in such misconduct in the future, in the amount of $15,000,000.00 or more;

i.  Plaintiff prays that the Court award Plaintiff costs and expenses of this action and award Plaintiff reasonable attorney fees as provided in Title VII 42 U.S.C.A. §2000e, et. seq.; the American with Disabilities Act; and or like state statutes;

j.  Plaintiff, in accordance with his rights under the United States and Texas Constitutions, and statutory rights under Title VII 42 U.S.C. §2000e-5(k); the American with Disabilities Act; and or like state statutes demands a trial by jury on issues triable to a jury;

k.  Pre-judgment interest accruing at the rate of Six per cent (6%) per annum[1] from December 9, 2010 until the date of judgment;

l.  Post-judgment interest at the rate of Eighteen per cent (18%) per annum or at the highest legal or contractual rate allowed by law from the date of judgment until the judgment is paid;

m.  Judgment in the amount of Seventy Five Thousand Dollars **($75,000.00)** as initial attorney's fees plus additional attorney's fees when incurred in prosecution of this lawsuit, if Defendant does not appeal this judgment this to the Fifth Circuit Court of Appeals and time for appeal to that court has expired, Defendant shall be entitled to a remittitur of Five Thousand Five Hundred Dollars ($5,500.00), against the judgment for attorney's fees; and if Defendant does not appeal from the Court of Appeals to the Supreme Court of the United States and time for that appeal has expired, Defendant shall be entitled to a remittitur of Four Thousand Five Hundred Dollars ($4,500.00) against the judgment for attorney's fees;

---

[1] If no specific rate of interest is agreed on by the parties, 6 percent annual interest, starting thirty days after the amount is due and payable, maybe charged.  Tex. Const. art. XVI, § 11; Tex. Fin. Code Ann. §302.002 (Vernon Supp. 2003); see: *Miner-Dederick Construction Corp. v. Mid-County Rental Service, Inc.*, 603 S.W.2d 193, 200 (Tex. 1980).  This is sometimes referred to as "legal Interest."  T Fin C §§ 301.002(a)(8), 302.002.

n. All costs of court;

o. All expert witness fees incurred in the preparation and prosecution of this action;

p. All court reporter fee incurred in the preparation and prosecution of this action;

q. Plaintiff be granted all writs necessary to enforce the judgment of this Court; and

r. Plaintiff be awarded such other, further, and different relief as the nature of the case may require or as may be determined to be just, equitable, or proper by the Court.

Respectfully submitted, this 22nd day of June, 2011, by:

**/s/ Hiram McBeth**
Hiram McBeth, III, Esq.
SBT No. #13329500
6060 North Central Expwy, Suite #560
Dallas, Texas 75206
Tel:  (972) 498-8702
Fax:  (972) 674-3111
**ATTORNEY FOR PLAINTIFF**